UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA DOTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:15 CV 1931 RWS |
| | ) | |
| DOLGENCORP, INC. and | ) | |
| DOLGENCORP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before me on defendant Dolgencorp LLC ("Dollar General")'s motion to compel arbitration and to stay this action. Plaintiff Sandra Doty brings this suit alleging a wage and hour violation against Dollar General, her former employer. Dollar General seeks to enforce the Dollar General Employee Arbitration Agreement ("Arbitration Agreement") that Doty and Dollar General entered into when she was their employee. Doty opposes the motion, arguing that the Arbitration Agreement is invalid and should not be enforced. The question of whether Arbitration Agreement is valid, however, has been delegated to the arbitrator. As a result, I will compel arbitration and stay this action pending arbitration.

## Legal Standard

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, "establishes a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011)). "[T]he FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether 'the making of the agreement for arbitration or the failure to comply therewith' is at issue." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (quoting 9 U.S.C. § 4). The United States Court of

Appeals for the Eighth Circuit "has refined this inquiry to asking (1) whether the agreement for arbitration was validly made and (2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute falls within the scope of the arbitration agreement." *Id.*; *see also Torres*, 781 F.3d at 968-69. An arbitration agreement's scope is interpreted literally, with any doubts resolved in favor of arbitration. *MedCam*, 414 F.3d at 975. A district court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotations omitted).

"Because 'arbitration is a matter of contract,' whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be 'invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Torres*, 781 F.3d at 968-69 (quoting *AT&T Mobility*, 131 S.Ct. at 1745–46) (internal quotations omitted)).

Under Missouri law, "arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses . . . . such as fraud, duress, or unconscionability." *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. 2012). The contract defense of unconscionability is used to "guard against one-sided contracts, oppression and unfair surprise." *Brewer v. Mo. Title Loans*, 364 S.W.3d 486, 492-93 (Mo. 2012). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Torres*, 781 F.3d at 968-69 (citing *Faber v. Menard*, 367 F.3d 1048, 1052 (8th Cir.

2004)). "[N]o state-law rule that is 'an obstacle to the accomplishment of the FAA's objectives' should be applied to invalidate an arbitration agreement." *Robinson*, 364 S.W.3d at 515 (quoting *AT&T Mobility*, 131 S.Ct. at 1748).

When arbitration is compelled, "[t]he FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3).

## Discussion

There is no dispute that Doty signed the Arbitration Agreement, nor is there any claim that she opted out of the agreement. It is also undisputed that Doty's claims fall within the scope of the Arbitration Agreement. Rather, the disagreement at issue here is about the validity of the Arbitration Agreement itself.

The Arbitration Agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-4, and expressly incorporates the American Arbitration Association: Employment Rules and Mediation Procedures ("AAA Rules"). Arbitration Agreement [#5-1] at 2. The Arbitration Agreement requires the parties to arbitrate any dispute "arising out of or related to" Doty's employment with Dollar General. *Id.*

The Arbitration Agreement states, in relevant part:

> You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or termination of employment with Dollar General ("Covered Claim" or "Covered Claims") will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement.
>
> ∗∗∗
>
> The procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of

3

employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, claims alleging violations of wage and hour laws, state and federal laws prohibiting discrimination, harassment, and retaliation, claims for defamation, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.

\*\*\*

You have the opportunity to opt out of this Agreement, meaning that you will not be bound by its terms. If you opt out, Dollar General will not be bound by the terms of this Agreement either. To opt out, you must expressly notify Dollar General of your intention to opt out by filling out and submitting electronically the "Arbitration Opt Out Form" linked on DGme within 30 days of the day you access the Agreement on DGme.

Arbitration Agreement [#5-1] at 1-3.

Doty argues that the Arbitration Agreement is invalid for lack of consideration because at-will employment does not constitute consideration under Missouri Law. She also argues that a bilateral contract does not otherwise exist because the parties do not have mirror obligations under the Agreement, the practical effect of the class action waiver only limits employee rights, the language of the Arbitration Agreement is generally focused on claims brought by employees, and Doty was not given a meaningful opportunity to opt-out from the Arbitration Agreement.

As an initial matter, Dollar General argues that the arbitrator, not the district court, should decide the threshold question of the validity of the Arbitration Agreement because the Agreement expressly incorporates the AAA Rules, which grant the arbitrator the sole authority to rule on the validity of the Arbitration Agreement.[1] Specifically, Rule 6.a of the AAA Employment Arbitration Rules and Mediation Procedures states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Dollar General finds support in *Green*

---

[1] Dollar General also argues that the Arbitration Agreement is valid, but because I conclude that the parties have delegated validity review to the arbitrator, I will not address this argument.

*v. SuperShuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir. 2011), in which the United States Court of Appeals for the Eighth Circuit held that by incorporating the AAA's Rules in an arbitration agreement, parties clearly and unmistakably agree to allow the arbitrator to determine threshold questions of arbitrability. *Id.* at 769.

Doty contends that I must first determine the threshold issue of validity. Doty relies on *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010), for the proposition that a district court must decide whether an arbitration agreement is enforceable "before ordering compliance with [the] agreement." Doty also notes that the Arbitration Agreement here expressly states that "claims concerning the scope or enforceability of [the Arbitration Agreement]" are not claims covered by the Agreement. [#5-1].

Both of Doty's arguments fail. First, Doty conflates the distinct but related terms "validity" and "enforceability." Challenges to the validity of a contract go to whether a valid contract was formed in the first place, such as whether there was offer and acceptance, consideration, or a meeting of the minds. *See Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (essential elements of any contract, including one for arbitration, are "offer, acceptance, and bargained for consideration") (internal citation omitted). In contrast, challenges to the enforceability of a contract argue that, although a contract might have been validly formed, its terms are so unconscionable, because of fraud or duress, for example, that it should not be enforced. *See id.* at 774; *see also Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 607 (Mo. Ct. App. 2015), as modified (Sept. 1, 2015), reh'g and/or transfer denied (Sept. 1, 2015), transfer denied (Oct. 27, 2015).

Here, Doty argues the Arbitration Agreement is invalid because there is a lack of consideration and mutuality of obligations. These are challenges to the validity of the

5

Arbitration Agreement itself – not the enforceability of the agreement. As a result, the fact that the Arbitration Agreement states that "claims concerning the scope or enforceability of [the Arbitration Agreement]" are not claims covered by the Agreement is not relevant to the challenges brought here.

Second, Doty misreads *Rent-A-Center*. In *Rent-A-Center*, the Court held "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 71. The Court limited its holding, however, by explaining that courts will only "intervene" when "the basis of [the] challenge [is] directed specifically to the agreement to arbitrate," as opposed to challenges that apply to the contract as a whole. *Id.* The Court further clarified that, even where, as here, the underlying contract itself is an arbitration agreement, the application of the rule remains the same, such that only challenges to delegation-type provisions specifically will be reviewed by the courts. *Id.* at 72 n.3. As a result, the Court concluded, "unless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.[2]

---

[2] The Missouri Court of Appeals for the Western District recently applied the *Rent-A-Center* holding to a case with similar facts to those here in *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 604 (Mo. Ct. App. 2015), explaining:
> "[T]he question of arbitrability—whether a[n] ... agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination[,] [u]nless the parties clearly and unmistakably provide otherwise ..." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (emphasis added). "An agreement to arbitrate a gateway issue [such as arbitrability] is simply an additional, antecedent agreement the party seeking arbitration asks the ... court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent–A–Center*, 561 U.S. at 70, 130 S.Ct. 2772. Thus, "we look to the [a]greement to see if the parties affirmatively addressed the question of who decides arbitrability." *Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623, 625 (8th Cir.2006). "[A]n arbitration agreement need not recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." *Houston Refining,*

6

Here, like in *Rent-A-Center*, Doty's challenges are to the validity of the Arbitration Agreement as a whole, and as a result must be decided by the arbitrator. Doty argues that at-will employment does not constitute consideration for an arbitration agreement under Missouri Law. She also argues that a bilateral contract does not otherwise exist because the parties do not have mirror obligations, the practical effect of the class action waiver only limits employee rights, the language of the Arbitration Agreement is generally focused on claims brought by employees, and Doty was not given a meaningful opportunity to opt-out from the Arbitration Agreement. Noticeably absent is any challenge directed specifically to the delegation provision of the agreement, incorporated by the parties' adoption of the AAA Rules, which delegates to the arbitrator the authority to resolve threshold questions of arbitrability, including claims about the "validity of the arbitration agreement." *See* [#5-1]; AAA Rule 6.a. Doty's challenges go to the validity of the Arbitration Agreement as a whole, not the delegation provision itself. As a result, I "must treat [the Arbitration Agreement] as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 2779; *see also Dotson v. Dillard's, Inc.*, 472 S.W.3d 599 (Mo. Ct. App. 2015).

## Conclusion

By incorporating the Rules of the AAA in the Arbitration Agreement, the parties clearly and unmistakably agreed to allow the arbitrator to determine threshold questions of arbitrability, including challenges to the validity of the Arbitration Agreement. Additionally, there is no dispute that Doty's wage and hour claims fall within the scope of the Arbitration Agreement.

---

*L.P. v. United Steel, Paper and Forestry, Rubber, Mfg.*, 765 F.3d 396, 410 n.28 (5th Cir.2014). Rather, "[a] delegation provision that gives an arbitrator the authority to resolve disputes relating to the 'enforceability,' 'validity,' or 'applicability' of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability." *W.L. Doggett LLC v. Paychex, Inc.*, 92 F.Supp.3d 593, 597 (S.D.Tex.2015) (collecting cases).

Under these circumstances, I must enforce the parties' bargained-for Arbitration Agreement and compel arbitration of Doty's claims. As a result, I will grant Dollar General's motion to compel arbitration and will stay this action pending arbitration. *See Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3) ("The FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it.").

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Dollar General's Motion to Compel Arbitration and Stay this Action #[5] is **GRANTED**.

**IT IS FURTHER ORDERED that** the Clerk of Court shall administratively close this matter. The parties shall notify the Court of the resolution of the arbitration proceedings in a timely manner. Further Court action in this matter will be determined after such notice.

*[signature]*
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of May, 2016.